A00A1950. KRAFT v. ADAMS et al.
(545 SE2d 69)

BLACKBURN, Chief Judge.

Kent Kraft appeals from the trial court's dismissal of his complaint against Michael Adams and other state officials, contending that the trial court erred by (1) ruling that he could not sue the defendants in their individual capacities under 42 USC § 1983 for actions taken in their official capacities and (2) dismissing his claim for attorney fees and costs under 42 USC § 1988. For the reasons set forth below, we affirm.

A motion to dismiss for failure to state a claim upon which relief may be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. . . . In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all

doubts regarding such pleadings must be resolved in the filing party's favor.

(Citations omitted.) *Anderson v. Flake*.[1]

According to the allegations set forth in the complaint, Kraft is a former instructor at the University of Georgia, a state institution. In April 1999, Kraft learned that the University was holding proceedings to revoke the tenure of Dr. Nadeem Naqvi, a former colleague of his. On April 23, Kraft sent an e-mail message to S. Elizabeth Bailey, Associate Director for Legal Affairs for the University who was involved with prosecuting Naqvi, commenting on the Naqvi proceeding and requesting a copy of the University's sexual harassment policy. On April 27, Kraft sent a second e-mail in which he criticized the handling of the Naqvi matter and threatened to contact the media. That afternoon, Bailey responded that she did not understand his communications and, furthermore, any subsequent communication should be made through her superior, Jere Morehead.

That evening, Kraft forwarded another e-mail to Bailey. This e-mail was a copy of a communication sent to Scott Siegler at Granada Entertainment, a member of the media. Shortly thereafter, Kraft sent another e-mail to Bailey, explaining that the forwarded e-mail to Siegler had been sent to her by mistake and he threatened legal action by Siegler, Granada, and himself if she did not delete the message. A few minutes later, Bailey received a second e-mail from Kraft, slightly revised, again stating that the Siegler e-mail had been sent by mistake, but not threatening legal action. A few minutes later, Bailey received a third e-mail from Kraft, again slightly revised, and again stating that the Siegler e-mail had been mistakenly sent and threatening legal action. Kraft alleged that the three messages were sent due to an error in his computer server. Shortly after Bailey received the three messages, Kraft sent a fourth e-mail to Bailey, stating that a virus had attached her e-mail address to items he tried to mail out and threatening legal action if she disclosed the content of any of his messages.

On the morning of April 28, Kraft sent another e-mail stating that he had fixed the virus and that future e-mail would go through Morehead. On the afternoon of April 28, while Kraft was attending a hearing on the Naqvi matter, Officer Platt of the University Police Department served a barring notice on Kraft and escorted him off campus. The notice barred Kraft from all University properties for a period of two years. The notice requested that (1) no further e-mail be sent from him, (2) he make no further phone calls to any University

---

[1] *Anderson v. Flake*, 267 Ga. 498, 501 (2) (480 SE2d 10) (1997).

department, and (3) future contact with the University be through written correspondence or legal representation. An amended barring notice was issued on July 1, barring Kraft from all University property for a period of 90 days, except that he could attend public meetings, visit his daughter (who was a student), or apply for employment.

Kraft alleged that Bailey and Morehead spoke to the University Police Department, specifically Officer Platt and Assistant Chief James E. Williamson, about issuing the barring notice and are, therefore, directly responsible for the barring notice. He further alleged that defendants Chuck Horton, the Chief of the University Police; Asa Boynton, Director of Public Safety; Michael Adams, University President; and Stephen Portch, University Chancellor, ratified the issuance of the barring notice.

Kraft asserted claims under 42 USC § 1983 for violations of his constitutional rights, including his right to due process, freedom of speech, and his Sixth Amendment right to a public trial. He also asserted a claim for attorney fees under 42 USC § 1988. The defendants filed a motion to dismiss, which the trial court granted, finding that Kraft had not stated a claim for relief under 42 USC § 1983.

1. Kraft contends that the trial court erred by ruling that he could not sue the defendants in their individual capacities under 42 USC § 1983 for actions taken in their official capacities. The trial court, citing *Hafer v. Melo*,[2] stated that the defendants could not be sued in their individual capacities because they were acting in their official capacities. We agree that the defendants could not be sued in their individual capacities in this case, because individually, they were entitled to qualified immunity.

State officials may be held personally liable under 42 USC § 1983 if they, while acting under color of state law, caused the deprivation of a federal right. *Hafer v. Melo*, supra. Nonetheless,

[g]overnment officials performing discretionary functions are granted a qualified immunity shielding them from imposition of personal liability pursuant to 42 USC § 1983 insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Thus, the test is applied by considering the objective reasonableness of the official's actions (irrespective of his subjective beliefs) in light of legal rules which

[2] *Hafer v. Melo*, 502 U. S. 21, 25 (112 SC 358, 116 LE2d 301) (1991).

were clearly established at the time the action was taken.

(Citations, punctuation and footnote omitted.) *Bell v. City of Albany.*[3]

> The burden is on the government official to demonstrate that the alleged constitutional violations occurred while she was acting in the scope of her discretionary authority. Once that is established, the burden then shifts to the plaintiff to establish that the defendant violated a clearly established statutory or constitutional right. This requirement that plaintiff show a clearly established right is a strenuous one. . . . [T]he shield of qualified immunity extends to all government actors but the plainly incompetent or those who knowingly violate the law.

(Citation omitted.) *Sawyer v. Coleman.*[4]

In this case, to the extent the named defendants played a role in the issuance of the amended barring notice, the issuance did not violate any clearly established law. Although the State may not prohibit all communicative activity in public forums, it may enforce regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication. See *Perry Ed. Assn. v. Perry Local Educators' Assn.*[5] Here, although the barring notice restricted Kraft's ability to make phone calls and send e-mail to the University for a set amount of time, it did allow him to contact the University through written correspondence or legal representation. We conclude that the issuance of the barring notice was tailored to the threat Kraft presented to the University in time, place, and manner and did not, therefore, violate any clearly established law.

2. The trial court did not err by dismissing Kraft's claims that he was deprived of his due process rights because he did not receive a hearing on the barring notice. Kraft's argument fails because he does not allege that he requested a hearing after having received the notice. Indeed,

> [i]t is well settled that, even if a defendant has a due process right to a hearing, that right [might] be waived by failure to request a hearing. The trial court has no duty to initiate [a] hearing until requested by one of the parties. The party

---

[3] *Bell v. City of Albany*, 210 Ga. App. 371, 374 (436 SE2d 87) (1993).
[4] *Sawyer v. Coleman*, 245 Ga. App. 37, 38-39 (537 SE2d 193) (2000).
[5] *Perry Ed. Assn. v. Perry Local Educators' Assn.*, 460 U. S. 37, 45 (103 SC 948, 74 LE2d 794) (1983).

seeking a hearing must take affirmative steps to request one.

(Citations and punctuation omitted.) *Isaac v. State*.[6]

3. The trial court did not err by dismissing Kraft's claim that he was deprived of his Sixth Amendment right to a public trial because that amendment pertains to criminal proceedings and Kraft does not allege that he was criminally prosecuted. U. S. Const., Amend. 6; see generally *Waller v. State*.[7]

4. Kraft's claim for attorney fees and costs under 42 USC § 1988 is rendered moot by the proper dismissal of his underlying claims.

5. By motion, the defendants have requested that this case be remanded to the trial court, because at the time of the appeal, the trial court had not ruled on their pending motion to dismiss the appeal for an unreasonable delay of two months by Kraft in paying the costs of the production of the record for appeal. Because of our ruling, this request is now moot.

*Judgment affirmed. Eldridge and Barnes, JJ., concur.*

DECIDED JANUARY 23, 2001 —
RECONSIDERATION DENIED FEBRUARY 20, 2001 — ▮▮▮▮▮▮

*Waters & Gross, Adam S. Caveney, David W. Griffeth*, for appellant.

*Thurbert E. Baker, Attorney General, Kathleen M. Pacious, Deputy Attorney General, John C. Jones, Senior Assistant Attorney General, B. Patricia Downing, Devon A. Orland, Assistant Attorneys General,* for appellees.

---

[6] *Isaac v. State*, 237 Ga. App. 723, 728 (516 SE2d 575) (1999).
[7] *Waller v. State*, 251 Ga. 124, 127 (303 SE2d 437) (1983).